

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

MAR 28 2025

_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. 3:25-cr-00064 |
| ) | |
| v. ) | 18 U.S.C. § 371 |
| ) | |
| ARTHUR HENDERSON ) | |

# INFORMATION

THE ACTING UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At all times material to this Information:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program that provided health care benefits to individuals who were at least 65 years old, blind, or disabled. The benefits available under Medicare were governed by federal statutes and regulations. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a "federal health care program" as defined in Title 42, United States Code, Section 1320a-7b.

3. Medicare programs covering different types of benefits were separated into different program "parts." "Part A" of the Medicare program covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. "Part B" of the Medicare Program was a medical insurance program that covered, among other things, medically necessary physician

services and outpatient care, including durable medical equipment ("DME"). DME was medical equipment that could withstand repeated use and was used for medical purposes and included items such as prosthetics, orthotics, ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "braces").

4. Physicians, clinics, and other health care providers, including DME suppliers, pharmacies, and laboratories, that rendered items or provided services to Medicare beneficiaries were known as Medicare providers and were able to apply for and obtain a "provider number." A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services or items provided to beneficiaries.

5. To participate in Medicare, providers were required to submit applications in which the provider agreed to abide by the Medicare laws, policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers were required to abide by all Medicare-related laws and regulations, including the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)(2)), which prohibited the offering, payment, solicitation, or receipt of any remuneration to induce the referral of a patient or the purchase, lease, order, or arrangement thereof, of any good, facility, services, or item for which payment may be made in whole or part by a federal health care program. Providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedure, rules, and regulations.

6. Medicare reimbursed DME companies and other healthcare providers for services and items rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

7. A Medicare claim was required to be properly documented in accordance with Medicare rules and regulations. To receive payment from Medicare, providers submitted or caused

2

the submission of claims to CMS that were required to set forth, among other things, the beneficiary's name and Medicare identification number, the item or service provided to the beneficiary, the date on which the items or services were provided, the cost of the items or services, the name and identification number of the physician or other health care provider who ordered or prescribed the items or services, and the name and identification number of the Provider who provided the items or services. Providers conveyed this information to Medicare by submitting claims using billing codes and modifiers.

8. To be eligible for Medicare reimbursement under Medicare Part B, DME was required to be reasonable and necessary for the treatment or diagnosis of the beneficiary's illness or injury, be ordered by an appropriately qualified and licensed medical professional, be properly documented, and be provided as represented to Medicare. Medicare would not pay claims for items or services procured through kickbacks and bribes.

### The Defendant and Related Entities

9. Summit Marketing Solutions, Inc. was a marketing company with its principal place of business in Huntington Beach, California.

10. Defendant **ARTHUR HENDERSON** was the owner and chief executive of Summit Marketing Solutions, Inc.

11. Company #1 was a DME company located in the Middle District of Tennessee in Brentwood, Tennessee, and was enrolled as a supplier in Medicare.

12. Co-Conspirator #1 was a resident of Brentwood, Tennessee, and was the owner of Company #1.

13. Company #2 was a DME company located in Brentwood, Tennessee, and was enrolled as a supplier in Medicare.

14. Company #3 was a DME company located in Franklin, Tennessee, and was enrolled as a supplier in Medicare.

15. Co-Conspirator #2 was a resident of Franklin, Tennessee, and was an actual or beneficial owner of DME companies, including Company #1, Company #2, and Company #3.

16. Co-Conspirator #3 was a resident of Murfreesboro, Tennessee, and was an owner of Company #1 and Company #3.

17. Telemedicine Company #1 was a purported telemedicine company based in Boca Raton, Florida.

## COUNT ONE

18. Paragraphs 1 through 17 are re-alleged and incorporated by reference as though fully set forth herein.

19. From in or about March 2020 and continuing through in or about May 2021, in the Middle District of Tennessee and elsewhere, **ARTHUR HENDERSON** did willfully and knowingly combine, conspire, confederate, and agree with others known and unknown to the Acting United States Attorney to defraud the United States, including, but not limited to, impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program, and to commit certain offenses against the United States, that is:

   a. to violate Title 42, United States Code, Sections 1320a-7b(b)(1)(A)&(B), by knowingly and willfully soliciting and receiving remuneration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and

4

Case 3:25-cr-00064   Document 1   Filed 03/28/25   Page 4 of 10 PageID #: 4

in part under a Federal health care program, that is, Medicare, and in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and

b. to violate Title 42, United States Code, Sections 1320a-7b(b)(2)(A)&(B), by knowingly and willfully offering and paying remuneration, including kickbacks, bribes, and rebates, directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare, and to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

### Purpose of the Conspiracy

20. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) soliciting and receiving and offering and paying kickbacks in exchange for orders for DME and for patient information; (b) submitting and causing the submission of false and fraudulent claims to Medicare for DME items that were medically unnecessary and/or not eligible for reimbursement and/or not provided as represented; (c) concealing and causing the concealment of false and fraudulent claims to Medicare; and (d)

diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means

21. The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

22. **ARTHUR HENDERSON** acquired and operated Summit Marketing Solutions, Inc., a purported marketing company.

23. **ARTHUR HENDERSON** opened a bank account in the name of Summit Marketing Solutions, Inc., for the purpose of paying and receiving kickbacks for DME referrals and doctors' orders.

24. **ARTHUR HENDERSON**, through Summit Marketing Solutions, Inc., direct-marketed medical products, including DME, to Medicare beneficiaries, and without regard to medical necessity, in order to obtain beneficiaries' Medicare identification numbers and other personal information.

25. **ARTHUR HENDERSON**, through Summit Marketing Solutions, Inc., paid call centers, including offshore call centers, to contact Medicare beneficiaries and obtain their information.

26. **ARTHUR HENDERSON**, through Summit Marketing Solutions, Inc., obtained physician orders for DME items by paying kickbacks to telemedicine companies, including Telemedicine Company #1.

27. **ARTHUR HENDERSON**, through Summit Marketing Solutions, Inc., sold doctor orders for DME items for Medicare beneficiaries, as well as information obtained from beneficiaries, to DME suppliers, including Company #1, Company #2, and Company #3, in exchange for the payment of kickbacks.

28. **ARTHUR HENDERSON** and his co-conspirators concealed and disguised the scheme by entering into sham contracts and agreements that disguised kickbacks in exchange for doctor orders and patient information as payments for marketing services or for software licenses and portal access, when in fact the payments were for doctors' orders and patient information.

29. **ARTHUR HENDERSON** caused to be submitted false and fraudulent claims to Medicare through DME suppliers Company #1, Company #2, and Company #3, for the DME items that were procured through kickbacks, were not medically necessary, and were not eligible for reimbursement.

30. As a result of such false and fraudulent claims, Medicare reimbursed DME suppliers for the DME items.

31. **ARTHUR HENDERSON** and his co-conspirators diverted fraud proceeds from the scheme for their personal use and benefit, the use and benefit of others, and to further the fraud.

## OVERT ACTS

32. In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Middle District of Tennessee and elsewhere, at least one of the following overt acts, among others:

A. On or about March 19, 2020, **ARTHUR HENDERSON** sent an email to Co-Conspirator #1 and Co-Conspirator #2, describing and attaching the requirements for the DME orders for braces.

B. On or about March 21, 2020, **ARTHUR HENDERSON** sent an email to Co-Conspirator #1 and Co-Conspirator #2, discussing the "Orthotics campaign" between Company #1, Company #2, and Summit Marketing Solutions, Inc., and describing the costs associated with purchasing doctors' orders for DME braces.

C. On or about March 25 and 26, 2020, **ARTHUR HENDERSON** entered into service agreements with DME Suppliers Company #1 and Company #2 that purported to contract for hourly marketing services in exchange for raw leads.

D. On or about April 6, 2020, Co-Conspirator #2 sent a text message to **ARTHUR HENDERSON** regarding obtaining doctors' orders ("DOs") from **ARTHUR HENDERSON** that said "Make it rain DO's...." and **ARTHUR HENDERSON** responded "My goal this week between the two of you is no less than 30 transfers. We wont [sic] stop till we hit it."

E. On or about July 1, 2020, Co-Conspirator #3 entered into a contract with **ARTHUR HENDERSON** via Summit Marketing Solutions, Inc., on behalf of DME supplier Company #3 that purported to contract for hourly marketing services.

F. On or about July 7, 2020, Co-Conspirator #2 sent an email to **ARTHUR HENDERSON**, copying Co-Conspirator #3, and stated, "For this to work, we need a healthy margin so that we can scale with you as we discussed earlier on the phone. With our order of 10 DO's per week, we really need the following: 10 backs, 8 knees, and a combo of 5 or so ankle/shoulder/wrist. . . . to avoid audit risk, we use an L code for Shoulders and Ankles that reimburse much less."

G. On or about the dates listed below, **ARTHUR HENDERSON**, through Summit Marketing Solutions, Inc., received payments from the entities listed below, via wire transfer, each constituting an overt act:

| On or About Date | Payment From | Payment To | Receiving Bank | Amount |
|---|---|---|---|---|
| April 20, 2020 | Company #1 | Summit Marketing Solutions, Inc. | Bank of America | $3,500.00 |
| May 4, 2020 | Company #2 | Summit Marketing Solutions, Inc. | Bank of America | $6,335.00 |

| | | | | |
|---|---|---|---|---|
| September 9, 2020 | Company #3 | Summit Marketing Solutions, Inc. | Bank of America | $9,000.00 |
| October 6, 2020 | Company #1 | Summit Marketing Solutions, Inc. | Bank of America | $6,750.00 |

H. On or about the dates listed below, **ARTHUR HENDERSON** sent payments to the entities listed below, via wire transfer, each constituting an overt act:

| On or About Date | Payment From | Payment To | Receiving Bank | Amount |
|---|---|---|---|---|
| April 17, 2020 | Summit Marketing Solutions, Inc. | Telemedicine Company #1 | CitiBank | $3,880.00 |
| May 4, 2020 | Summit Marketing Solutions, Inc. | Telemedicine Company #1 | CitiBank | $7,430.00 |
| July 6, 2020 | Summit Marketing Solutions, Inc. | Telemedicine Company #1 | CitiBank | $4,630.00 |

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

33. The allegations of this information are re-alleged and incorporated by reference as though fully set forth herein for purposes of alleging forfeiture to the United States of certain property in which the defendant has an interest.

34. Upon conviction of a criminal conspiracy to defraud the United States or to commit a violation of Title 42, United States Code, Section 1320a-7b, as alleged in this Information, **ARTHUR HENDERSON** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

35. The property subject to forfeiture includes, but is not limited to, the sum of money equal in value to the gross proceeds traceable to the commission of the violation alleged in this

Information, which the United States will seek as a forfeiture money judgment as part of each defendant's sentence.

36. If any of the above-described forfeitable property, as a result of any act or omission of **ARTHUR HENDERSON**:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property, and it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of **ARTHUR HENDERSON**.

ROBERT E. McGUIRE
ACTING UNITED STATES ATTORNEY

SARAH K. BOGNI
ROBERT S. LEVINE
ASSISTANT UNITED STATES ATTORNEYS